UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT V. PRIVE, III,

                        Plaintiff,

v.                                                      5:04-CV-1024
                                                        (GTS/GHL)

FRANK EVERETT JOHNSON; and GAINEY
TRANSPORTATION SERVICES, INC.,

                        Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

PARKER WAICHMAN & ALONSO, LLP                   ANDRES F. ALONSO, ESQ.
  Counsel for Plaintiff                         JERROLD S. PARKER, ESQ.
111 Great Neck Road
Great Neck, NY 11021

SMITH SOVIK KENDRICK & SUGNET, P.C.             KEVIN E. HULSLANDER, ESQ.
  Counsel for Defendants
250 South Clinton Street, Suite 600
Syracuse, NY 13202-1252

HON. GLENN T. SUDDABY, United States District Judge

## MEMORANDUM DECISION and ORDER

        Currently before the Court in this personal injury action filed by Robert V. Prive, III

("Plaintiff") is a motion for summary judgment filed by Frank Everett Johnson and Gainey

Transportation Services, Inc. ("Defendants").  (Dkt. No. 37.)  For the reasons set forth below,

Defendants' motion is granted, and Plaintiff's Second Amended Complaint is dismissed.

I.      **RELEVANT BACKGROUND**

  A.      **Plaintiff's Claims**

   Generally, liberally construed, Plaintiff's Second Amended Complaint alleges that, on

June 3, 2003, on Interstate 81, in the Town of Horner, New York, Defendant Johnson carelessly

operated a motor vehicle, causing Plaintiff to suffer injuries.  (*See generally* Dkt. No. 18 [Plf.'s

Second Am. Compl.].)  Based on these allegations, Plaintiff's Second Amended Complaint

asserts a claim of negligence against Defendants.  (*Id.*)  Familiarity with the factual allegations

supporting this claim in Plaintiff's Second Amended Complaint is assumed in this Decision and

Order, which is intended primarily for review by the parties.  (*Id.*)[1]

  B.      **Defendants' Motion**

   Generally, in support of their motion for summary judgment, Defendants argue as

follows: (1) because Plaintiff's vehicle collided with the rear end of Defendant Johnson's

vehicle, under New York law, there is a presumption that Plaintiff was negligent; (2) Plaintiff's

expert should be precluded from testifying because his testimony is unreliable; and (3) without

this expert testimony, Plaintiff is not able to overcome the presumption of negligence, and his

negligence claim must therefore be dismissed.  (*See generally* Dkt. No. 38 [Defs.' Memo. of

Law].)

   In Plaintiff's response to Defendants' motion for summary judgment, he argues as

follows: (1) summary judgment is not appropriate because he has adduced admissible record

―――――――――――――

  [1]  The Court notes that, although Defendants initially asserted a counterclaim
against Plaintiff in their Answer to his Complaint, this counterclaim has been voluntarily
withdrawn because Defendants failed to assert it in their Answer to Plaintiff's Second Amended
Complaint.

evidence from which a rational factfinder could conclude that Defendant Johnson was negligent; (2) his expert should not be precluded from testifying because any deficiencies in his testimony goes to weight, and not admissibility; (3) because Defendant Johnson's vehicle was moving when the accident occurred, there is no presumption of negligence under New York law, which would require him to provide a non-negligent explanation for the rear-end collision in order to withstand summary judgment; and (4) even assuming that a presumption of negligence exists, because Plaintiff has provided a non-negligent explanation for the accident, and Defendant was a proximate cause of Plaintiff's injuries, summary judgment is inappropriate.  (*See generally* Dkt. No. 44 [Plf.'s Response Memo. of Law].)

In their reply, Defendants argue as follows: (1) their statement of material facts should be deemed admitted because Plaintiff failed to comply with Local Rule 7.1 of the Local Rules of Practice for this Court; (2) Plaintiff's expert should be precluded from testifying; and (3) Plaintiff has failed to provide a non-negligent explanation for his conduct, and therefore the Court must conclude that Plaintiff was negligent as a matter of law.  (*See generally* Dkt. No. 45 [Defs.' Reply Memo. of Law].)

### C.     Undisputed Material Facts

In his opposition to Defendants' motion for summary judgment, Plaintiff chose not to file a response to Defendants' statement of undisputed material facts (a/k/a "a Rule 7.1 Response"). (*See generally* Docket Sheet.)  Based on the volume of the record evidence presented in this case, and the fact that Plaintiff was represented by experienced counsel when he filed his response to Defendants' motion, the Court declines to scour the record for evidence of material

questions of fact.[2]  Rather, for purpose of the pending motion, the Court accepts as true the

properly supported facts contained in Defendant's Local Rule 7.1 Statement, which are not

clearly in dispute.[3]  Based on these admissions, the following is a general summary of the

undisputed material facts in the case.  (Dkt. No. 37, Attach. 1 [Defs.' Rule 7.1 Statement].)

On June 3, 2003, Plaintiff and Defendant Johnson were involved in a vehicle collision.

At the time of the collision, Defendant Johnson was a professionally trained commercial tractor

trailer driver, having completed course work at the M.S. Carriers Driving Academy from March

3 through April 3, 2001.  As a reservist in the Army National Guard since 1981, Defendant

---

[2]	*See Janneh v. Regal Entm't Group*, 07-CV-0079, 2009 WL 2922830, at *1 n.3 (N.D.N.Y. Sept. 8, 2009) (McAvoy, J.); *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") (citations omitted); *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 291 (2d Cir. 2000) (noting that the Local Rules require the parties "to clarify the elements of the substantive law which remain at issue because they turn on contested facts" and the Court "is not required to consider what the parties fail to point out") (internal quotation marks and citations omitted).  Having said that, the Court refuses to turn a blind eye to any fact that is clearly in dispute.  *See Burgess v. County of Rensselaer*, 03-CV-0652, 2006 WL 3729750, at *1 (N.D.N.Y. Dec. 18, 2006) (McCurn, J.) (collecting cases).

[3]	*See* N.D.N.Y. L.R. 7.1(a)(3) ("Any facts set forth in the statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party."); *N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005) (upholding grant of summary judgment where "[t]he district court, applying Rule 7.1[a][3] strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitting a responsive Rule 7.1[a][3] statement that "offered mostly conclusory denials of [movant's] factual assertions and failed to include any record citations"); *White v. Verizon Commc'ns, Inc.*, 06-CV-1536, 2008 WL 5382329, at *3 (N.D.N.Y. Dec. 17, 2008) (Suddaby, J.) ("[W]here a plaintiff has failed to properly respond to a defendant's statement of material facts, contained in its Statement of Material Facts [a/k/a its "Rule 7.1 Statement"], the facts as set forth in that Rule 7.1 Statement will be accepted as true to the extent that those facts are supported by the evidence in the record."); *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. 2003) (Sharpe, M.J.) ("In this case, the plaintiff did not file a statement of undisputed facts in compliance with Local Rule 7.1[a][3]. Consequently, the court will accept the properly supported facts contained in the defendants' 7.1 statement.").

Johnson had also received Army training in the operation of all forms of motor vehicles used by the Army, including vehicles the approximate size of a commercial tractor, at the time of the collision.[4]

On the day of the accident, Defendant Johnson was driving a 2000 Freightliner tractor, hauling a 53-foot 2000 Great Dane trailer full of aquarium gravel into and through New York State on Interstate 81.  The entire length of the tractor trailer was 72 feet, and the width was eight feet, six inches.  The total height of the tractor trailer was 13.5 feet.  The total weight of his truck was 77,020 pounds.

Plaintiff was driving a 2001 Freightliner straight truck with a gross axle weight rating of 12,000 pounds for the first axle, and 21,000 pounds for the second axle.  Plaintiff was transporting approximately five containers of liquid helium into and through New York State on Interstate 81.  He estimated each container to be approximately five feet in diameter, five feet in height, and 500 to 600 pounds in weight.

Defendant Johnson's tractor trailer was equipped with tail lamps, stop lamps, side and rear reflectors, side marker lamps to the front, center and rear of the trailer, turn signals and hazard lights both to the rear of the tractor and rear of the trailer, and conspicuity reflective tape.  Defendant Johnson was traveling with his headlights illuminated, automatically activating many of the lamps on his tractor trailer.[5]

---

[4]     Defendant Johnson received further training while employed as a commercial driver for USA Truck and Gainey.

[5]     A pre-trip inspection conducted on the morning of June 3, 2003, confirmed that the lights, tires and brakes on the tractor trailer were all in working order.

While traveling northbound on Interstate 81, at an overpass near mile marker 59, Defendant Johnson experienced a blowout to the right inside tire of axle 3 of his tractor. Defendant Johnson was traveling 55 to 60 miles per hour when he suffered the blowout.  He estimated he traveled about 300 yards before he brought his vehicle to a complete stop off the road.[6]

To the right of the shoulder at the mile marker 59 overpass where Defendant Johnson pulled over was a steel guardrail.  To the right of the steel guardrail were lane delineators and mileage markers.  Defendant Johnson pulled his truck about 12 inches from the guardrail.

After bringing his vehicle to a stop, Defendant Johnson activated his emergency flashers. Defendant Johnson then exited his vehicle through the passenger's side door, stepping over the guardrail, to inspect the passenger's side of the truck and the blown tire.  Because the guardrail was close to the driving lane of Interstate 81, the truck was exposed to being hit by other vehicles.

After inspecting the blown tire for about five minutes, Defendant Johnson entered his vehicle and notified his dispatcher at Gainey of the blown tire.  Defendant Johnson provided dispatch with his approximate location.  He was then instructed to drive the truck to the nearest safe area where he could get off the interstate so that someone could be sent to repair the tire.

The guardrail north of the mile marker 59 overpass did not run continuously along the right side of Interstate-81, but it did extend approximately three-eighths of a mile beyond the overpass.  The distance from where the guardrail stopped beyond the mile marker 59 overpass,

_____

[6]      Plaintiff's expert, Kerry Nelson, testified that it was proper for Defendant Johnson to pull over to inspect his truck when he suspected a blowout.

and where it picked up again, was a couple of hundred yards.  Lane delineators and mileage markers were spaced along the right edge of the paved shoulder from the mile marker 59 overpass to the point of the collision.[7]  The delineators along the right shoulder were about 75 to 100 feet apart.  The mileage markers were spaced at one-tenth mile intervals along the entire right shoulder of Interstate 81.[8]  The ground to the right of the paved shoulder was a wet grassy marsh area that sloped away from the road.  The area to the right of the paved shoulder was too soft and unlevel to support the weight of Defendant Johnson's tractor trailer.  The paved shoulder north of the mile marker 59 overpass was not wide enough for a motor vehicle.[9]

Defendant Johnson therefore drove back into the right lane of Interstate 81, traveling northbound, intending to drive to the nearest rest stop or exit where he could get his truck off the road so his tire could be safely repaired.  When Johnson got back onto the highway, his emergency flashers were still activated from when he pulled to the side of the road to inspect his flat tire.  Defendant Johnson used his CB radio to warn trucks driving behind him that he was entering the highway and driving slowly with a flat tire.  One of the trucks that approached Defendant Johnson from the south told him over the CB radio that there was a rest area less than one mile ahead.

---

[7]      Plaintiff's expert was not aware of the lane delineators along the right edge of Interstate 81.

[8]      Plaintiff's expert was not aware that mileage markers every one-tenth of a mile were in place along the edge of Interstate 81.

[9]      Plaintiff's expert was not aware that the guardrail and white shoulder line nearly merged just north of the mile marker 59 overpass where Defendant Johnson experienced his tire failure.

About four tractor trailers passed Defendant Johnson on the left during the approximate one to two minutes that he was driving after getting back on Interstate 81.  After two of the trucks behind Defendant Johnson began to pass him in the left lane, he saw Plaintiff at least 200 yards behind him in the right lane.  Defendant Johnson was traveling at about 25 miles per hour, and still trying to pick up speed.[10]  Defendant Johnson estimated that Plaintiff was driving about the speed limit (65 miles per hour).  The next time Defendant Johnson saw Plaintiff's truck, it was a couple of hundred feet behind him, traveling about 70 miles per hour, and getting too close to stop.

Plaintiff first saw Defendant Johnson's vehicle in the right hand lane when he was about 100 yards behind it.  He estimated that he was driving 55 miles per hour.  As soon as Plaintiff saw Defendant Johnson's vehicle, he identified the vehicle as a big problem because it seemed like it was not moving.[11]

In front of Plaintiff's vehicle and behind Defendant Johnson's vehicle was a red car, which moved into the left lane to pass Defendant Johnson's vehicle.  After the red car in front of Plaintiff moved into the left lane, there were no other vehicles between the front of Plaintiff's truck and Defendant Johnson's tractor trailer.  However, there was a "wall" of vehicles in the left lane.

As he approached Defendant Johnson's vehicle, Plaintiff steered as square as he could with the back of Defendant Johnson's tractor trailer, and pushed his brakes, but not as hard as he

---

[10]     There is no minimum speed on the section of Interstate 81 where Defendant Johnson experienced the blown tire.

[11]     Plaintiff's expert did not credit Plaintiff's belief that it seemed that Defendant Johnson's truck was not moving.

could because he did not want to lose control of his vehicle.  Within the first second of applying his brakes, Plaintiff shifted into neutral gear.

Plaintiff struck the rear of Johnson's tractor trailer about eight (8) or ten (10) seconds after he first saw the tractor trailer about 100 yards ahead of him.  The impact of Plaintiff's truck hitting Defendant Johnson's truck from the rear was "heavy."  At the time of the collision, Defendant Johnson was driving 30 miles per hour and still accelerating.  The rest area where Defendant Johnson was driving to was a couple of hundred yards ahead.  Defendant Johnson's emergency flashers, which were activated before the impact, remained flashing after the parties' vehicles collided.

Measurements by the New York State Police at the scene resulted in a scale diagram showing that the vehicles came to rest about 225 feet after the area of impact.  There were no pre-impact tire marks at the accident site that would indicate evasive action.

The location on Interstate 81 between where Defendant Johnson had his blowout and the rest area, located just north of the point of impact, is generally straight and level.  At the time of the parties' collision, the weather was clear, the roads were dry, and, from a distance of at least 1,000 feet south of the impact location, a driver would have had a clear, generally straight and unobstructed view.[12]

Based on the severity of the collision, Plaintiff had no recollection of the events for the next two weeks.

---

[12]     Plaintiff's expert, Kerry Nelson, agreed during his deposition that the photographs at the scene of the accident show that there was more than 400 feet of visibility.

Familiarity with the remaining undisputed material facts of this action, as set forth in

Defendants' Rule 7.1 Statement, is assumed in this Decision and Order, which (again) is

intended primarily for review by the parties.  (*Id*.)

## II.     RELEVANT LEGAL STANDARDS

### A.     Legal Standard Governing Motions for Summary Judgment

Because the parties to this action have demonstrated, in their memoranda of law, an

accurate understanding of the legal standard governing motions for summary judgment, the

Court will not recite that  well-known legal standard in this Decision and Order, but will direct

the reader to the Court's recent decision in *Pitts v. Onondaga County Sheriff's Dep't*,

04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which

accurately recites that legal standard.

### B.     Legal Standards Governing Plaintiff's Claims

"Under New York law, a rear-end collision establishes a prima facie case of liability

against the following vehicle, thereby requiring the [driver of the following vehicle] to rebut the

inference of negligence with a non-negligent explanation for the collision."  *Mangual v. Pleas*,

02-CV-8311, 2004 WL 736817, at *4 (S.D.N.Y. Apr. 6, 2004) (citations omitted), *accord*, *Hong*

*v. Maher*, 02-CV-7825, 2004 WL 771127, at *2 (S.D.N.Y. Apr. 13, 2004) ("Under New York

law, a rear-end collision establishes a prima facie case of liability against the rear vehicle and

imposes a duty of explanation on the operator of that vehicle. . . .  Accordingly, the operator of

the moving vehicle is required to rebut the inference of negligence created by an unexplained

rear-end collision.") (citations and internal quotation marks omitted).[13]  "If, however, the [driver

of the following vehicle] offers such an explanation, such as mechanical failure, unavoidable

skidding on wet pavement, a sudden stop of vehicle, or any other reasonable explanation, the . . .

driver [of the following vehicle] overcomes the inference of negligence and summary judgment

is precluded."  *Mangual*, 2004 WL 736817, at *4 (citations omitted), *accord*, *Hong*, 2004 WL

771127, at *2.

## III.   ANALYSIS

As stated above in Part I.C. of this Decision and Order, Defendants advance three inter-

related arguments in support of their request for the dismissal of Plaintiff's negligence claim: (1)

because Plaintiff's vehicle collided with the rear-end of Defendant Jonhson's vehicle, there is a

presumption (under New York law) that Plaintiff was negligent; (2) Plaintiff's expert should be

precluded from testifying because his testimony is unreliable; and (3) without this expert

testimony, Plaintiff is not able to overcome the presumption of negligence, and his negligence

claim must therefore be dismissed.

---

[13]     *See also Krynski v. Chase*, 06-CV-4766, 2009 WL 6372543, at *7 (E.D.N.Y.
Sept. 30, 2009) ("Chase's claim that a presumption of negligence applies only in cases where the
forward vehicle is stopped or stopping-not where both vehicles are in motion, as here-is without
support and stems from a fundamental misunderstanding of the law.  In cases dating back more
than fifty years, New York courts have applied the presumption to circumstances involving
moving vehicles, . . . a presumption that has carried consistently into more recent times . . . .
Although, logically, the majority of rear-end collisions involve the slowing or stopping of the
forward vehicle, speed is not the controlling issue. Regardless of whether the forward vehicle is
stopped, slowing or proceeding apace, drivers following behind have a statutory duty to maintain
a safe distance between their vehicles and vehicles in front of them, a duty that adheres
regardless of the speed of traffic."); *Rebecchi v. Whitmore*, 172 A.D.2d 600, 602 (N.Y. App. Div.
2d Dep't 1991) (finding negligence liability and disregarding as irrelevant fact question of
whether or not plaintiff was stopped or still in motion).

A.      **Defendants' First Argument**

Based on the current record, the Court accepts Defendants' first argument that, under

New York law, there is a rebuttable presumption that Plaintiff was negligent because he rear-

ended Defendant Johnson's vehicle.  The Court makes this finding for the reasons set forth in

Defendants' memorandum of law, and for the reasons stated above in Part II.C. of this Decision

and Order.

B.      **Defendants' Second Argument**

Based on the current record, the Court accepts Defendants' second argument that the

testimony of Plaintiff's expert should be precluded as unreliable.  A witness qualified as an

expert will be permitted to testify if his testimony "will assist the trier of fact to understand the

evidence or to determine a fact in issue."  *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir.

1999) (quoting Fed. R. Evid. 702).  "To be admissible, expert testimony must be both relevant

and reliable."  *Melini v. 71st Lexington Corp.*, 07-CV-0701, 2009 WL 413608, at *4 (S.D.N.Y.

Feb. 13, 2009) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 [1993]).

"Specifically, expert opinion testimony must be (1) 'based upon sufficient facts or data,' (2) 'the

product of reliable principles and methods,' and (3) the result of applying those principles and

methods to the facts of the case in a reliable manner."  *Melini*, 2009 WL 413608, at *4 (quoting

Fed. R. Evid. 702).  "The proponent of expert testimony must establish its admissibility by a

preponderance of the evidence."  *Id.* (citing *Astra Aktiebolag v. Andrx Pharm., Inc.*, 222 F.

Supp.2d 423, 487 [S.D.N.Y. 2002] [citing Fed. R. Evid. 104(a)]).[14]

--------

[14]      Even if admissible under Fed. R. Evid. 702, expert testimony is still subject to
exclusion under Fed. R. Evid. 403 if "its probative value is substantially outweighed by the
danger of unfair prejudice." Fed. R. Evid. 403; *see also United States v. Young*, 745 F.2d 733,

"In *Daubert*, the United States Supreme Court confirmed that the trial court should serve as a gatekeeper, preventing the jury from being overwhelmed by unsupportable speculation cloaked as expertise." *Id*. (citing 509 U.S. at 595-96). The *Daubert* rule applies to scientific knowledge, as well as technical or other specialized knowledge. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

The Second Circuit has provided further explanation of the trial court's duties when evaluating expert testimony:

> First, . . . *Daubert* reinforces the idea that there should be a presumption of admissibility of evidence. Second, it emphasizes the need for flexibility in assessing whether evidence is admissible. Rather than using rigid 'safeguards' for determining whether testimony should be admitted, the Court's approach is to permit the trial judge to weigh the various considerations pertinent to the issue in question. Third, *Daubert* allows for the admissibility of scientific evidence, even if not generally accepted in the relevant scientific community, provided its reliability has independent support. Finally, the Court expressed its faith in the power of the adversary system to test 'shaky but admissible' evidence, and advanced a bias in favor of admitting evidence short of that solidly and indisputably proven to be reliable.

*Borawick v. Shay*, 68 F.3d 597, 610 (2d Cir. 1995) (internal citation omitted). "A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion per se inadmissible." *Amorgianos v. Nat' R.R. Passenger Corp*., 303 F.3d 256, 267 (2d Cir. 2002). Instead, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, Advisory Committee's Note; *see also Equal Emp't Opportunity Comm'n v. Morgan Stanley & Co.*, 324 F. Supp.2d 451, 456 (S.D.N.Y. 2004); *U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3*, 313 F. Supp.2d 213, 226 (S.D.N.Y. 2004).

---

765 (2d Cir. 1984) (Newman, J., concurring).

"This principle is based on the recognition that 'our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony.'" *Melini*, 2009 WL 413608, at *5 (quoting *Amorgianos*, 303 F.3d at 267).

However, "when an expert opinion is based on data, methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos*, 303 F.3d at 266; *accord Ruggiero v.. Warner-Lambert Co.*, 424 F.3d 249, 253 (2d Cir. 2005).[15]  Furthermore, "it is critical that an expert's analysis be reliable at every step." *Amorgianos*, 303 F.3d at 267.  Of course, "the district court must focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions." *Id*. at 266 (citing *Daubert*, 509 U.S. at 595).  Nevertheless, "conclusions and methodology are not entirely distinct from one another."  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  Accordingly "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Joiner*, 522 U.S. at 146.

---

[15]        *See also Zaremba v. Gen. Motors Corp.*, 360 F.3d 355, 358-60 (2d Cir. 2004) (holding that expert testimony that was speculative and unreliable was properly not considered by the district court on summary judgment); *Dreyer v. Ryder Auto. Carrier Group, Inc.*, 367 F. Supp.2d 413, 416-17 (W.D.N.Y. 2005) (noting that "[a]n otherwise well-credentialed expert's opinion may be subject to disqualification if he fails to employ investigative techniques or cannot explain the technical basis for his opinion"); *Dora Homes, Inc. v. Epperson*, 344 F. Supp.2d 875, 887-89 (E.D.N.Y. 2004) (declining to consider plaintiff's expert's testimony in deciding pending motions for summary judgment based on a finding that the expert's testimony "is unreliable under Fed. R. Evid. 702 and the principles articulated in *Daubert* and its progeny," given that the expert [1] qualified his opinions, [2] failed to support his opinions with any methodology which the Court could analyze, and [3] rested his opinions "upon nothing more than subjective belief and unsupported speculation"); *Mink Mart, Inc. v. Reliance Ins. Co.*, 65 F. Supp.2d 176, 180 (S.D.N.Y. 1999) ("In order for an expert's opinion to be reliable and thus admissible, it must be grounded on verifiable propositions of fact") (citations omitted), *aff'd*, No. 99-9211, 2000 WL 33223395 (2d Cir. May 30, 2000).

14

Here, Plaintiff's expert, Kerry Nelson, provided an expert's report that contained, *inter alia*, his opinion that (1) Defendant Johnson was in violation of both the Federal Motor Carrier Safety Regulations ("FMCSR") and New York State Vehicle and Traffic Law Section 1181 when he traveled on Interstate 81 at a speed of 25-30 miles per hour,[16] and (2) after Defendant Johnson experienced the flat tire, his truck "was considered to be out of service, according to the FMCSR, which is a condition that does not permit the vehicle to be driven until a repair can render the [vehicle] in good operating condition."[17]  (Dkt. No. 37, Attach. 8, at 42-43.)  Mr. Nelson based his opinions on the following: (1) an incomplete police accident report dated June 3, 2003; (2) the deposition testimony of Defendant Johnson; (3) the deposition testimony of Plaintiff; and (4) color photographs of the accident scene and vehicles.  (Dkt. No. 38, Attach. 7, at 9-10; Dkt. No. 37, Attach. 8, at 41.)

In issuing his report, Mr. Nelson did not consider (nor was he aware of the existence of) the accident reconstruction performed by the New York State Police.  (Dkt. No. 38, Attach. 7, at 18.)[18]  Mr. Nelson also did not perform his own reconstruction of the accident, or any analysis of the extent of visibility that was available to Plaintiff as he approached (and ultimately collided

---

[16]     Mr. Nelson further opined that the slow speed at which Defendant Johnson was driving "would present a hazard to other highway motorists coming from the rear."  (Dkt. No. 37, Attach. 8, at 42.)

[17]     Mr. Nelson further opined that Defendant Johnson "should have remained in the emergency lane until told to move by . . . a police officer or until the repairs could have been made[,]" and that, "[h]ad Mr. Johnson pulled the truck over into the emergency lane at a safe place where the guard rail was absent, this collision would have been avoided."  (Dkt. No. 37, Attach. 8, at 43.)

[18]     The Court notes that the conclusions reached by the Collision Reconstruction Unit were as follows: (1) "[t]he primary causative factor in this collision was driver inattention on the part of . . . Robert V. Prive III"; and (2) "[a] secondary causative factor in this collision was unsafe tire on the part of . . . Frank E. Johnson."  (Dkt. No. 37, Attach. 9, at 17.)

with) Defendant Johnson's vehicle.  Nor did he consider the following: (1) ariel photographs

taken on the accident scene (Dkt. No. 38, Attach. 7, at 23); and/or (2) documentation of evidence

prepared by HRYCAY Consulting Engineers,[19] which included (a) a scaled diagram of the

accident site, (b) scale diagrams of the accident vehicles, (c) the tables of data regarding both

vehicles, (d) additional photos of the accident scene taken by Custard Adjusters, and (e) the one

hundred and thirty-three (133) photographs taken by Christopher Medwell within two days of

the accident, which showed the mile marker 59 overpass, the approach to the accident collision

location at 100-foot intervals from a distance starting 1,000 feet before the impact location, and

the vehicles and their components after the collision (Dkt. No. 38, Attach. 7, at 75-76, 88).

In addition, when he issued his report, Mr. Nelson was not aware of the following: (1) the

correct width of Defendant Johnson's tractor trailer;[20] (2) the fact that there were lane delineators

along the edge of the paved shoulder between the mile marker 59 overpass and the rest area that

Defendant Johnson was driving to when the accident occurred (Dkt. No. 38, Attach. 7, at 131-

34); (3) the fact that Interstate 81 had mile markers set at one-tenth intervals (Dkt. No. 38,

Attach. 7, at 131-34); (4) the fact that the guardrail north of the mile marker 59 overpass nearly

merged with the fog line on the side of the highway (Dkt. No. 38, Attach. 7, at 135); and (5) the

contour or condition of the ground to the right of the paved shoulder beyond the mile marker 59

overpass (Dkt. No. 38, Attach. 7, at 131, 136).

---

[19]     The Court notes that HRYCAY Consulting Engineers were hired by Defendants
in connection with this action.

[20]     Mr. Nelson believed, when he issued his report, that the trailer was eight feet
wide, but the trailer was in fact eight feet six inches wide.  (Dkt. No. 38, Attach. 7, at 127.)

Furthermore, during his deposition, Mr. Nelson made the following admissions: (1) his opinion that Defendant Johnson should have remained in the emergency lane after experiencing the flat tire was based on his "assumption" that some flat, firm and suitable location existed for Defendant Johnson to pull beyond the paved shoulder (Dkt. No. 38, Attach. 7, at 131, 136);[21] (2) his opinion that Defendant Johnson was in violation of the minimum posted speed limit when he was driving 30 miles per hour on Interstate 81 was not based on firsthand knowledge (Dkt. No. 38, Attach. 7, at 113-115); (3) he was not aware of any regulation fixing a minimum speed, or any study performed to support the establishment of a minimum speed, as required by the Vehicle and Traffic Law cited in his report (*id*.); and (4) the photographs that he reviewed showed visibility on the date and time of the accident to be greater than 400 feet (*id*. at 83-87).

Based on the record evidence, the Court is unable to accept Mr. Nelson's opinion that it was unlawful for Defendant Johnson to drive on Interstate 81 at a speed of 25-30 miles per hour. This is because, among other things, there has been no evidence introduced establishing either that there was a minimum speed limit on the section of Interstate 81 where the parties' collision occurred, or that any study was performed to support the establishment of a minimum speed limit on the section of Interstate 81 where the parties' collision occurred.[22]

Moreover, while the Court recognizes Defendant Johnson's driving 25 to 30 miles per hour on Interstate 81 presented "a hazard to other highway motorists coming from the rear," the

---

[21]     Mr. Nelson admitted that his assumption was not based upon any fact or inspection, and that he could not identify where such a location existed.  (Dkt. No. 38, Attach. 7, at 131, 136.)

[22]     *See* N.Y. Veh. & Traf. § 1181(a) ("No person shall drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic *except when reduced speed is necessary for safe operation or in compliance with law*.") (emphasis added).

Court is unable to accept Mr. Nelson's opinion that, as a result of this hazard, Defendant Johnson

"should have remained in the emergency lane until told to move by . . . a police officer or until

the repairs could have been made."  This is because, among other things, Mr. Nelson's own

deposition testimony indicates that it was not proper for Defendant Johnson to remain stopped

where he initially stopped to examine the blown tire.  (Dkt. No. 38, Attach. 7, at 128-29, 136.)[23]

Furthermore, the Court is unable to accept Mr. Nelson's testimony that Defendant

Johnson should have "pulled the truck over into the emergency lane at a safe place where the

guard rail was absent" instead of pulling the truck over where he did because this testimony

requires the Court accepting Mr. Nelson's speculation that a "safe place" existed for Defendant

Johnson to pull over,[24] despite the fact that the record evidence demonstrates that no such place

existed.  For example, the record evidence establishes the following: (1) to the right of the

shoulder in the majority of the interstate between where Defendant Johnson pulled over and

where the accident occurred there was either a guardrail, lane delineators, or mile markers

(which were set at one-tenth intervals); (2) at the sections where there was no guardrail, the grass

to the right of the paved shoulder was marshy, and sloped downward; and (3) the guardrail north

---

[23]     *See also* N.Y. Veh. & Traf. § 1202(a)(1)(j) ("Except when necessary to avoid
conflict with other traffic, or when in compliance with law or the directions of a police officer or
official traffic-control device, no person shall . . . [s]top, stand or park a vehicle . . . [o]n a state
expressway highway or state interstate route highway, including the entrances thereto and exits
therefrom, which are a part thereof, except in an emergency."); *Dowling v. Consol. Carriers
Corp.*, 103 A.D.2d 675, 676 (N.Y. App. Div., 1st Dep't 1984) (noting that, "Section 1202 [subd
[a], par 1, cl j] appears clearly to embody a legislative judgment that stopping, standing or
parking a vehicle either on the roadways or shoulders of State express highways or State
interstate route highways, highways designed for fast-moving vehicular traffic, presents, except
in carefully specified circumstances, an unacceptable danger of accidents").

[24]     The Court notes that Mr. Nelson testified that he has never driven on the portion
of Interstate 81 where Defendant Johnson pulled over.  (Dkt. No. 38, Attach. 7, at 129, 136.)

of the mile marker 59 overpass nearly merged with the fog line (i.e. dividing line between road and shoulder) on the side of the highway.

Finally, the Court finds that Mr. Nelson's opinions are based almost entirely on speculation, assumption, and/or limited facts, and not the product of reliable principles and methods.  For example, Mr. Nelson bases his conclusion that there was a minimum speed limit on the portion of Interstate 81 where the parties' collision occurred, in part, on his conversation with a state trooper whose name he could not recall, and in part on his conversation with an investigator, who said, "[I]t's a pretty good chance that there's a minimum speed on the interstate."  (Dkt. No. 38, Attach. 7, at 113-14.)  Moreover, Mr. Nelson bases his opinion that Defendant Johnson could have pulled over on a portion of the shoulder of the interstate where no guardrail existed on his "assumption that [such a location] existed before the location of the collision."  (Dkt. No. 38, Attach. 7, at 131.)

For these reasons, the Court concludes that Mr. Nelson's opinion testimony is inadmissible.  As a result, the Court will not consider Mr. Nelson's opinions in evaluating the third argument presented by Defendants in their motion for summary judgment.

### C.    Defendants' Third Argument

Based on the current record, the Court accepts Defendants' third argument that Plaintiff has failed to adduce admissible record evidence establishing that there was a non-negligent reason for Plaintiff colliding with Defendant Johnson's vehicle.  "[A] non-negligent explanation may include mechanical failure, unavoidable skidding on wet pavement, a sudden stop of the vehicle ahead, or any other reasonable cause."  *Altman v. Bayliss*, 95-CV-0734, 1999 WL 782338, at *2 (W.D.N.Y. Sept. 30, 1999) (citing *Power v. Hupart*, 688 N.Y.S.2d 194, 195 [N.Y. App. Div., 2d Dep't 1999]).

Here, in response to Defendants' third argument, Plaintiff essentially advances the following two arguments: (1) he did not realize that Defendant Johnson was driving his vehicle at 25 to 30 miles per hour (given the curvature in the road on Interstate 81) until it was too late to avoid colliding with Defendant Johnson's vehicle; and/or (2) it was impossible for him to avoid colliding with Defendant Johnson's vehicle because there was a "wall" of vehicles in the left lane, and, if he slammed on his brakes, he would have lost control of his vehicle and potentially hit those vehicles.

The Court rejects Plaintiff's first argument because (1) Plaintiff's own testimony is that he saw Defendant's vehicle driving slowly when it was about 100 yards away, about eight (8) or ten (10) seconds before he collided with it, and (2) the only record evidence regarding the time at which Plaintiff would have needed to brake in order to avoid hitting Defendant Johnson's vehicle demonstrates that Plaintiff could have brought his vehicle to a complete stop at the speed Plaintiff claims he was driving in 6.8 seconds.[25]

Similarly, the Court rejects Plaintiff's second argument because, again, the record evidence establishes that, had Plaintiff applied the brakes in a manner "consistent with the capabilities of his truck in an emergency situation," he could have brought his vehicle to a complete stop before hitting Defendant Johnson's vehicle.[26]  Moreover, the record evidence establishes that Plaintiff could not have slowed his vehicle down to 20 miles per hour (or less) when he collided with Defendant Johnson's vehicle, as he claims, because the minimum speed of

---

[25]     (Dkt. No. 37, Attach. 4, at ¶ 14; Dkt. No. 37, Attach. 4, at 13-14.)

[26]     (Dkt. No. 37, Attach. 4, at 13-14 [finding also that "there was no need for [Plaintiff] to brake in an aggressive manner" because there was "sufficient time and distance" from when Plaintiff noticed Defendant Johnson's vehicle "for [Plaintiff] to have . . . moved into the adjacent lane or braked at a normal rate"].)

20

both vehicles *after* the collision was 32 miles per hour.  (Dkt. No. 37, Attach. 4, at 14.)

However, even assuming that Plaintiff had slowed his vehicle to less than 20 miles per hour

when he collided with Defendant Johnson's vehicle, as he claims, the record evidence

establishes that, at 20 miles per hour, Plaintiff could have steered into the paved nine foot six

inch emergency lane and avoided the collision.  (Dkt. No. 37, Attach. 5, at 17.)

For these reasons, the Court finds that Plaintiff has failed to satisfy his burden of

establishing a non-negligent explanation for colliding with the rear of Defendant Johnson's

vehicle.  The Court would only add that, even if it were to credit Mr. Nelson's opinion

testimony, such testimony could not help Plaintiff satisfy his burden of providing a non-

negligent explanation for hitting Defendant Johnson's vehicle. This is because Mr. Nelson did

not provide an expert opinion regarding Plaintiff's conduct, or, more specifically, why Plaintiff

was not negligent in hitting Defendant Johnson's vehicle in the rear.  Instead, Mr. Nelson's

opinions focused on why Defendant Johnson's actions constituted negligence.

As a result, Plaintiff's negligence claim is dismissed.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 37) is

**<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff's Second Amended Complaint (Dkt. No. 18) is **<u>DISMISSED</u>**.

Dated: August 23, 2010
       Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge